IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANK HARBUCK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0342 |
| | § | |
| BRIGGS EQUIPMENT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Briggs Equipment's Motion for Summary Judgment (Document No. 33) and Plaintiff Frank Harbuck's [Cross] Motion for Summary Judgment (Document No. 35). After carefully considering the motions, responses, reply, and the applicable law, the Court concludes as follows:

I.  Background

Plaintiff Frank Harbuck ("Plaintiff") brings this action against his former employer, Defendant Briggs Equipment ("Briggs"), alleging that Briggs unlawfully interfered with his rights under the Family and Medical Leave Act (FMLA).  Plaintiff began working for Briggs as a service technician, or forklift mechanic, in February 1999.  *See* Document No. 15 ¶¶ 4-5; Document No. 35 ex. 1 at 19, 21.  At that time, Plaintiff received a copy of Briggs's employee handbook and signed an "Employee Acknowledgment of Receipt of Handbook," which stated, "I understood that [the handbook]

contains important information that I am expected to understand and follow as a Briggs Equipment employee." Document No. 34 ex. 1 at 27, 30-31, 52; ex. 1-2.  Among other things, the handbook included a description of Briggs's FMLA Policy and explained the various types of paid and unpaid medical leave available to employees under Briggs's Earnings Continuation Plan.  Id. ex. 1 at 77-82; ex. 1-10; ex. 1-11.[1]

During his 60-months tenure with Briggs, Plaintiff suffered from various medical conditions, including diabetes, venous insufficiency, and cellulitis in his legs, which required him to seek intermittent and ongoing medical care.  *See* Document No. 15 ¶ 7; Document No. 35 ex. A ¶ 2, ex. B ¶¶ 2-3.  He used all of his

---

[1] Briggs's FMLA Policy states that up to 12 weeks of unpaid FMLA leave--including leave on an extended, intermittent, or reduced work schedule--is available to eligible employees for qualifying reasons and provides that FMLA leave shall run concurrently with any paid sick and short term disability leave. *See* Document No. 34 ex. 1-11.  The Policy requires employees to notify Briggs in writing of the need for leave at least 30 days in advance or, if emergency conditions prevent such notice, as soon as it is practicable.  Id.  In addition, the Policy prohibits discrimination against any employee exercising his rights under the FMLA and instructs any employee who believes he has been treated unfairly to contact the Human Resources Manager and, if the problem is not resolved at that level, Briggs's President.  Id.

Briggs's Earnings Continuation Plan "consists of Sick Leave and Short Term Disability, and is designed to maintain [employees'] financial security during periods of disability up to 180 days." *See* Document No. 34 ex. 1-10.  The Plan provides that such benefits run concurrently with the benefits available to employees under the FMLA.  Id.

paid sick leave for 2001 and 2002.  In January 2003, Plaintiff used all of his paid sick leave for the entire year of 2003, as well as some vacation time, for treatment of his venous insufficiency. Document No. 15 ¶¶ 8-10; Document No. 34 ex. 1 at 41, 80-82, ex. 1-1, ex. 1-10; Document No. 35 ex. A ¶ 3, ex. D.  When his treatment was completed, Plaintiff provided Briggs a return-to-work letter from his physician, Dr. Gonzales.  Document No. 34 ex. 1 at 41-42; Document No. 35 ex. 1 ¶ 3.  The letter did not indicate that Plaintiff would need any additional leave.  Document No. 34 ex. 1 at 41.

In mid-2003, Briggs implemented an absenteeism policy, pursuant to which any employee who had used 100% of his allotted sick leave in 2001 and 2002 and who, as of May 2003, had used 50% or more of his allotted sick leave for 2003 would receive an Employee Warning.  Document No. 34 ex. 2 at 54-55, 70.  Thus, on June 13, 2003, Plaintiff--who had used all of his leave for 2001, 2002, and 2003--received from his supervisor, Tim Kolajajck ("Kolajajck"), a written First Employee Warning for "poor attendance."  *See* Document No. 34 ex. 1 at 69-72, ex. 1-7; Document No. 35 ex. A ¶ 4; ex. C.  Plaintiff avers that he was told that if he took any additional time off he was subject to being fired and that he would have to seek any future medical treatment after business hours or on the weekend.  *See* Document 35 ex. A ¶ 4.  From

this point on, Plaintiff avers, he feared taking time off for medical treatment.  Id. ex. A ¶ 6.

In mid-July 2003, Plaintiff developed a severe cellulitis infection in his legs.  Document No. 34 ex. 1 at 44; Document No. 35 ex. A ¶ 7, ex. B ¶ 2.  Although Plaintiff was reluctant to leave work for treatment, Plaintiff avers that Kolajajck urged him to get medical treatment and advised him that he would not be disciplined for taking time off work to do so.  Document No. 35 ex. A ¶ 7.  Accordingly, Plaintiff sought medical treatment from a new physician, Dr. Arlette Pharo ("Dr. Pharo"), who placed Plaintiff on antibiotics and asked him to return in two weeks for reevaluation.  Document No. 34 ex. 1 at 42; Document No. 35 ex. A ¶ 7, ex. B ¶ 2, ex. D.  When Plaintiff returned to work the next week, however, he received a Second Employee Warning for "poor attendance" from Kolajajck dated July 17, 2003.  Document No. 15 ¶ 15; Document No. 34 ex. 1 at 72-73; Document No. 35 ex. A ¶ 8, ex. D.  The Warning stated, "If poor attendance continues, [sic] will result in follow up warnings and/or further disciplinary action that may result in suspension or dismissal."  Document No. 35 ex. D.  Plaintiff testified that Kolajajck told him that if he took any more time off, there was a good chance that he would lose his job.  Document No. 34 ex. 1 at 48-49.  Plaintiff states that he approached Brian Davidson ("Davidson"), the general manager of the Briggs location where Plaintiff worked, about the disciplinary action, and

4

Davidson's response was for Plaintiff to choose between his job and his legs.  Document No. 15 ¶ 17; Document No. 35 ex. A ¶ 8.  Upset by this response, Plaintiff wrote a rebuttal to the disciplinary action, in which he detailed the serious nature his medical condition and stated that Briggs's policy of disciplining him for taking protected time off violated his rights, but the disciplinary actions were not reversed.  *See* Document No. 35 ex. A ¶ 9; ex. D.

In early August, Plaintiff developed another severe infection in his legs.  *See* Document No. 35 ex. A ¶ 11; ex. B ¶ 2.  Despite suffering from a high fever and being almost unable to walk, Plaintiff continued to report to work.  Document No. 35 ex. A ¶ 11.  After three days of suffering, Plaintiff was advised by his shop lead man, Larry Keeton ("Keeton"), to contact Human Resources.  Document No. 35 ex. A ¶ 11.  On August 7, 2003, Keeton took Plaintiff to see Liz Ruiter ("Ruiter"), the Briggs human resource representative for his work location, who called Brenda Johnston ("Johnston"), the head of Human Resources in Dallas, Texas, to discuss Plaintiff's situation.  Document No. 15 ¶¶ 23-28; Document No. 34 ex. 1 at 66, 77.  Plaintiff was then advised to see a doctor.  Document No. 35 ex. A ¶ 13.  That same day Plaintiff saw Dr. Pharo, who placed Plaintiff on antibiotics and provided to Briggs an Attending Physician's statement, which stated that Plaintiff would be unable to work from August 7 through August 14,

2003, when Plaintiff's condition would be reevaluated.   Document No. 34 ex. 1-4.

Upon receiving the Attending Physician's form, Briggs immediately placed Plaintiff on short-term disability and FMLA leave beginning August 7, 2003.   Document No. 34 ex. 1 at 65-66, 95; ex. 1-5.   Plaintiff received 100% of his compensation for the first 10 weeks of his leave and 65% of his compensation for an additional 16 weeks under Briggs's Earnings Continuation Plan. Document No. 34 ex. 1-14.   By February 2, 2004, Plaintiff had exhausted all of his available vacation time, sick leave, FMLA leave, and short term disability, but was still unable to return to work.  *See* Document No. 34 ex. 1 at 69, 108 ex. 1-6; Document No. 35 ex. B ¶¶ 4-5.   Accordingly, Briggs notified Plaintiff that his employment was being terminated as of February 2, 2004.   Document No. 35 ex. 1-6.   Plaintiff had already applied for long-term disability benefits through UNUM Provident, and received his first benefits on March 24, 2003.   Document No. 34 ex. 1 at 96-97, 110; ex. 1-6; ex. 1-12.[2]   Due to his continuing inability to work, Plaintiff has not applied for or accepted further employment of any kind.   Document No. 15 ¶ 32; Document No. 34 ex. 1 at 94, ex. 3; Document No. 35 ex. B ¶¶ 4-5.

---

[2]   Shortly thereafter, Plaintiff applied for disability benefits from the Social Security Administration ("SSA"), which caused UNUM Provident to reduce Plaintiff's long-term disability benefits.   Document No. 34 ex. 1 at 61-62, 95-96.

6

In his First Amended Complaint, Plaintiff alleged that "[a]s a result of Briggs's unwillingness to allow [him] to exercise his rights under the FMLA and the undue delay caused by Briggs in allowing [him] to obtain medical assistance, [his] medical condition [was] severely compromised."   Document No. 15 ¶ 32.[3] Thus, Plaintiff alleges, Briggs interfered with his rights under the FMLA and discriminated and/or retaliated against him for taking leave protected by the FMLA.   Document No. 15 ¶¶ 34-35.   In addition to costs and attorneys' fees, Plaintiff seeks to recover actual damages consisting of lost wages and compensation; consequential damages, for past and future medical expenses, pain and suffering, and loss of consortium; and liquidated damages.   Id. ¶¶ 39-40, 43.

Briggs moves for summary judgment on all of Plaintiff's claims, asserting that: (1) Plaintiff received paid leave in excess of that required by the FMLA, such that he cannot maintain an interference claim; (2) because Plaintiff was unable to return to work when his FMLA leave ended, he was not entitled to reinstatement; (3) Plaintiff's discrimination and retaliation claims fail as a matter of law because he cannot show that he suffered an actionable adverse employment action; and (4) even if

---

[3] In this regard, Dr. Pharo avers that "[b]ased on reasonable medical probability, the delay in [Plaintiff]'s treatment led to a medical condition that has not reversed itself," causing Plaintiff to continue to be unable to work.   Document No. 35 ex. B ¶ 4.

Briggs violated the FMLA, Plaintiff cannot raise a genuine issue of material fact that he suffered any damages recoverable under the FMLA.  *See* Document No. 34.  In response, Plaintiff filed a cross-motion for summary judgment, in which he indicated that he is only pursuing an FMLA interference claim, for which he seeks to recover only what he contends are the wages he lost as a result of Briggs's interference with the exercise of his FMLA rights.  *See* Document Nos. 35-36.[4]

## II.   Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th

---

[4] Therefore, to the extent that Plaintiff's First Amended Complaint asserts an FMLA retaliation/discrimination claim, as well as claims for past and future medical expenses, and damages for pain and suffering, and for loss of consortium, summary judgment will be entered in favor of Briggs.

Cir. 1998).   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.   Id.   "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."   Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."   Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).   "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.   Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).   On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."   Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."   Anderson, 106 S. Ct. at 2513.

III.   <u>Discussion</u>

The FMLA provides, in relevant part, that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Eligible employees are also entitled to intermittent leave or leave on a reduced schedule when medically necessary. <u>Id.</u> § 2612(b)(1). Among other prohibitions, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the Act. <u>Id.</u> § 2615(a)(1). Although the FMLA does not define "interference," the relevant Department of Labor ("DOL") regulations provide that "interference" includes situations where the employer discourages an employee from applying for leave:

> Any violations of the [FMLA] constitute interfering with, restraining, or denying the exercise of rights provided by the [FMLA].  "Interfering with" the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, *but discouraging an employee from using such leave.*

29 C.F.R. § 825.220(b) (emphasis added); *see also* <u>Stallings v. Hussmann Corp.</u>, 447 F.3d 1041, 1050 (8th Cir. 2006) ("When an employer attaches negative consequences to the exercise of protected rights, it has 'chilled' the employee's willingness to

10

exercise those rights because he or she does not want to be fired or disciplined for doing so.") (citing <u>Bachelder v. Am. West Airlines, Inc.</u>, 259 F.3d 1112, 1124 (9th Cir. 2001) (holding that the FMLA's anti-interference provision bars conduct that "'tends to chill' an employee's willingness to exercise [his] FMLA rights"); <u>Harcourt v. Cincinnati Bell Tel. Co.</u>, 383 F. Supp. 2d 944, 962 (S.D. Ohio 2005) ("[A]n employer violates the FMLA by discouraging or chilling employees from exercising their FMLA rights.").

Plaintiff contends that Briggs interfered with the exercise of his rights under the FMLA when it "verbally reprimanded, explicitly disciplined in writing, and forewarned in a systematic and continuous manner that he could be fired if he took more time off for [his] medical condition and/or medical treatment."  Document No. 35 at 8.  Due to this unlawful interference, Plaintiff argues, he delayed seeking treatment for his medical condition out of fear of losing his job--a delay that caused his pre-existing condition to become irreversible and rendered him disabled and unable to work.  <u>Id.</u> at 11.  Thus, Plaintiff argues, Briggs's FMLA violation caused his condition to become irreversible and left him unable to return to gainful employment, and he is entitled to recover the damages he suffered as a result of the violation--a loss of earnings due to his inability to work from August 7, 2003 (the date he went on short-term disability) to the present.  <u>Id.</u> at 11-12. In other words, it is Plaintiff's position that Briggs's

11

absenteeism policy, written warnings, and verbal threats of termination discouraged him from taking FMLA leave and was therefore the proximate cause of his becoming incapacitated, which deprived him of his future earning capacity.  In response, Briggs argues that even if Plaintiff has alleged a cognizable FMLA interference claim--which Briggs does not concede--Briggs is still entitled to summary judgment on the interference claim because the damages Plaintiff seeks are not recoverable under the FMLA.[5]

Section 2617 of the FMLA provides that any employer who violates the Act is liable for damages equal to:

> (i) the amount of--

> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;

> (ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and

> (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i),

---

[5] Although Briggs contends that it cannot be held liable for interfering with Plaintiff's FMLA rights because Plaintiff received all leave to which he was entitled under the FMLA, Briggs advises that "the Court need not examine any issue regarding liability to resolve this dispute because Plaintiff cannot recover any damages available under the FMLA."  Document No. 37 at 3-4.

> except that if an employer who has violated section
> 2615 of this title proves to the satisfaction of
> the court that the act or omission which violated
> section 2615 of this title was in good faith and
> that the employer had reasonable grounds for
> believing that the act or omission was not a
> violation of section 2615 of this title, such court
> may, in the discretion of the court, reduce the
> amount of liability to the amount and interest
> determined under clauses (i) and (ii), respec-
> tively; and
>
> (B)   for such equitable relief as may be appropriate,
> including employment, reinstatement, and promotion.

29 U.S.C. § 2617(a)(1)(A)-(B).  Plaintiff contends that the damages

he seeks are wages that were lost to him by reason of Briggs's

alleged FMLA violation, which are recoverable under subsection

(A)(i)(I).   Briggs disagrees and argues that what Plaintiff

actually seeks is in the nature of an award of consequential

damages and/or personal injury damages, which are not available

under the FMLA.   *See* Nero v. Indus. Molding Corp., 167 F.3d 921,

930 (5th Cir. 1999) (holding that the FMLA "does not provide for

recovery of general or consequential damages"); *see also* Sheaffer

v. County of Chatham, 337 F. Supp. 2d 709, 729 (M.D.N.C. 2004)

("Plaintiff cannot recover for anxiety or physical injury sustained

as a result of an FMLA violation."); Vicioso v. Pisa Bros., Inc.,

No. Civ. A. 98-2027, 1998 WL 355415, at *4 (S.D.N.Y. July 1, 1998)

(same).

Other courts have rejected damage theories similar to that

advanced by Plaintiff.   In Dawson v. Leewood Nursing Home, Inc.,

14 F. Supp. 2d 828 (E.D. Va. 1998), the plaintiff claimed that her former employer violated her FMLA rights when it refused to allow her to reassume the Director of Nursing ("DON") position that she had held before going on FMLA leave for breast cancer treatment. Dawson, 14 F. Supp. 2d at 830. After learning of this refusal, the plaintiff suffered severe and permanently disabling cardiac and pulmonary symptoms that precluded her from returning to work. Id. According to the plaintiff's expert witness, the stress that the plaintiff suffered upon learning she would not be returned to her DON position was a "major cause" of her symptoms. Id. Accordingly, the plaintiff sued her employer under the FMLA, seeking "present and future lost wages and employment benefits." Id. The employer moved for summary judgment, arguing, inter alia, that even if it violated the FMLA, the plaintiff could not prove that she suffered any recoverable damages. Id. at 832.

The court described the plaintiff's theory of damages as follows:

> Dawson argues that even though the defendants paid her full salary and benefits throughout the entire period at issue, she has sustained actual monetary losses as a direct result of the defendants' FMLA violation. Specifically, plaintiff argues, relying on the testimony of her expert witness, that "the stress Plaintiff encountered as a result of Defendant's illegal employment practices was a major cause of her eventual incapacitation." In other words, plaintiff seeks to recover future lost wages and employment benefits on the theory that the defendants' alleged failure to restore her to her position as DON or to an equivalent position

14

proximately caused her to become incapacitated, thereby
losing her future earning capacity.

Id. at 833.  Because the plaintiff did not suffer any wage loss
prior to her termination, the court held that § 2617(a)(1)(A)(i)(I)
did not apply.   Id.   Likewise, the court determined that the
plaintiff's injuries were not actual monetary losses sustained as
a direct result of the alleged FMLA violation, such that
§ 2617(a)(1)(A)(i)(II) did not apply.   Id. at 833-34.  Thus, even
if the plaintiff could prove that the employer's FMLA violation
caused her medical condition to worsen, the court could "find no
legal authority within the FMLA upon which to allow her to recover
for the injuries she sustained as a result."  Id. at 834.  Because
the plaintiff could "recover nothing but a symbolic victory" even
if she proved that the employer violated the FMLA, the court
granted summary judgment in favor of the employer.   Id. at 832,
834.[6]

---

[6] See also Johnson v. Georgia Television Co., --F. Supp. 2d--,
2006 WL 1599208 (N.D. Ga. June 7, 2006) (holding that the
plaintiff, who claimed that her assignment to an early morning
shift in retaliation for having requested FMLA leave resulted in an
aggravation of her medical condition and caused her to become
disabled, was not entitled to recover the difference between her
disability benefits and the wages she would have earned had she not
become disabled because such a recovery was "in the nature of
consequential damages which may not be recovered in an action under
the FMLA"); Lapham v. Vanguard Cellular Sys., Inc., 102 F. Supp. 2d
266, 268-70 (M.D. Pa. 2000) (holding that the plaintiff, who
claimed that her employer's interference with her FMLA rights
aggravated her medical condition and prevented her from seeking
other employment for more than a year after she was discharged, was
not entitled to recover wages lost after the date of her discharge

The court's analysis in <u>Dawson</u> is persuasive, and essentially for those same reasons Plaintiff cannot recover under the FMLA in this case. It is undisputed that Plaintiff received 12 weeks of FMLA leave, as well as all pay and benefits to which he was entitled under the FMLA and under Briggs's more generous Earnings Continuation Plan from August 7, 2003 (the date he went on FMLA leave) through February 4, 2004 (the date of his termination). Thus, even if Briggs discouraged Plaintiff from taking leave, no wages, salary, employment benefits, or other compensation were earned by Plaintiff or denied or lost to Plaintiff by reason of the interference during the period of his employment. *See* <u>Dawson</u>, 14 F. Supp. 2d at 833. Plaintiff's real claim against Briggs is more in the nature of a tort claim that he attempts to engraft upon the FMLA and then, citing § 2617(a)(1)(A)(i)(I), Plaintiff seeks to recover as damages his claimed future lost wages. This goes well beyond the remedy provided by Congress in its enactment of the FMLA. Damages recoverable under Section 2617(a)(1)(A)(i)(I), as the Fifth Circuit has held, are limited to lost salary or wages, lost employment benefits, or other compensation "indicative of a *quid pro quo* relationship between an employer and an employee." <u>Nero</u>, 167 F.3d at 930. Thus, not even out-of-pocket expenses

---

because FMLA damages are limited to financial losses arising from the employment relationship, and an employer can therefore have no liability for lost wages after the employment relationship lawfully ends).

16

incurred in finding another job and relocating one's family are recoverable. Id. The uncontroverted summary judgment evidence in this case is that in spite of an alleged interference violation by Briggs, Plaintiff sustained no loss of wages, salary, employment benefits, or other compensation to which he was entitled as a result of his and Briggs's "*quid pro quo* [employment] rela-tionship." Id.[7] Once Briggs lawfully terminated its employment relationship with Plaintiff, any liability for further wages ceased. *See* Lapham, 102 F. Supp. 2d at 269-70.[8] As a matter of law Plaintiff has no cognizable claim for the recovery of damages or other relief under the FMLA, and Briggs's motion for summary judgment will therefore be granted.

## IV.   Order

For the reasons set forth, it is hereby

ORDERED that Plaintiff Frank Harbuck's Motion for Summary Judgment (Document No. 35) is DENIED.  It is further

---

[7] Because Plaintiff has no claim for lost wages, he cannot recover liquidated damages or interest. *See* 29 U.S.C. § 2617(a)(1)(A)(ii)-(iii); Lapham, 102 F. Supp. 2d at 270 n.2; Dawson, 14 F. Supp. 2d at 833.

[8] Plaintiff does not contend that his termination violated the FMLA. *See generally* 29 C.F.R. § 825.214(b) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."); Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 429 (S.D.N.Y. 2004) ("Employees who are unable to work at the end of FMLA leave may be discharged.").

ORDERED that Defendant Briggs Equipment Inc.'s Motion for Summary Judgment (Document No. 33) is GRANTED, and Plaintiff's FMLA claims are DISMISSED on the merits.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas, on this 31st day of July, 2006.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE